FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION 2018 SEP 21  PM 3: 02

UNITED STATES OF AMERICA,

       Plaintiff,

v.                        Case No. 6:18-cv- 1568-ORL-41-TBS

$129,719 IN U.S. CURRENCY,

       Defendant.

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

The United States of America brings this complaint and alleges upon information and belief, in accordance with Supp'l Rule G(2), Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, as follows:

## NATURE OF THE ACTION

1.     This is a civil action *in rem* to forfeit to the United States of America, pursuant to 21 U.S.C. § 881(a)(6), approximately $129,719 in United States currency seized from Michael Simon (Defendant Funds).

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction over an action commenced by the United States by virtue of 28 U.S.C. § 1345, and over an action for forfeiture by virtue of 28 U.S.C. § 1355.

3.     This Court has *in rem* jurisdiction over the Defendant Funds pursuant to:

a.     28 U.S.C. § 1355(b)(1)(A), because pertinent acts or omissions giving rise to the forfeiture occurred in the Middle District of Florida; and

b.     28 U.S.C. § 1355(b)(1)(B), because venue properly lies in the Middle District of Florida pursuant to 28 U.S.C. § 1395.

4.     Venue is proper in the United States District Court for the Middle District of Florida, pursuant to 28 U.S.C. § 1355(b)(1), because the acts or omissions giving rise to the forfeiture occurred in this district.

## THE DEFENDANT *IN REM*

5.     The Defendant Funds consist of approximately $129,719 in U.S. currency that was seized from Michael Simon (Simon) on April 22, 2018 at Orlando International Airport (OIA) by law enforcement officers who determined that there was probable cause to believe that the Defendant Funds constitute: (1) money furnished or intended to be furnished by a person in exchange for a controlled substance in violation of the Controlled Substances Act; (2) proceeds traceable to such an exchange; or (3) money used or intended to be used to facilitate a violation of the Controlled Substances Act.

6.     Homeland Security Investigations (HSI) took custody of the Defendant Funds, and the funds remain in the custody of the United States.  As set forth in Supp'l Rule G(3)(b)(i), the Clerk of Court must issue a warrant to arrest the Defendant Funds if they are in the government's possession, custody, or control.

## BASIS FOR FORFEITURE

7.     The Defendant Funds are subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) because they constitute: (1) money furnished or intended to be furnished by a person in exchange for a controlled substance in violation of the Controlled Substances Act; (2) proceeds traceable to such an exchange; or (3) money used or intended to be used to facilitate a violation of the Controlled Substances Act.

## FACTS

8.     The facts and circumstances supporting the forfeiture of the Defendant Funds have been provided by HSI Special Agent Nestor Perez, who states as follows.

9.     On Sunday, April 22, 2018, Simon was ticketed to fly on American Airlines flight #473 from Orlando, Florida to Los Angeles, California at 5:25 am. Based upon SA Perez' training and experience, he knows California to be a source state for marijuana.

10.     Prior to his flight, the Transportation Security Administration (TSA) discovered a large amount of bundled currency in Simon's carry-on bag as he went through the screening process at the security checkpoint.  The information was passed on to law enforcement.

11.     Simon voluntarily agreed to speak with SA Perez and HSI Task Force Agent Q. Alleyne, a cross-designated HSI TFA assigned to the Metropolitan Bureau of Investigations (MBI), at the Orlando Police Department substation located within OIA.  Prior to questioning Simon, SA Perez identified himself to Simon via official

3

credentials and explained to Simon that he was free to leave at any time. Simon chose to remain at the substation to talk to agents about the money.

12.     During the interview, Simon told agents that he was a jeweler and the purpose of his travel was to purchase jewelry in California. He stated that he planned to travel throughout California searching for "what I'm looking for." However, Simon never provided agents with specifics as to what he was looking for. When asked why he would travel across the country to buy jewelry, Simon stated, "California has a lot of stuff going on."

13.     Simon then told agents that he purchased his plane ticket the day before. Based on SA Perez' training and experience, he knows it is common for drug traffickers and money couriers to purchase tickets within a short amount of time prior to traveling.

14.     Simon told agents he was traveling with approximately $130,000, which came from a variety of sources. Specifically, Simon stated $40,000 came from jewelry he pawned in Osceola County, FL on April 20, 2018, $12,000 came from an insurance settlement from a check issued by attorney Dan Newlin, and approximately $80,000 came from a safe he had at his house.

15.     Simon stated he kept the money at his residence, as opposed to a bank, "because if I need to use it, I use it." Based on SA Perez' training and experience, he knows drug traffickers and money launderers sometimes avoid using banks in an effort to evade reporting requirements, especially when the funds are derived from illicit activities.

16.     Simon then stated that he won $180,000-$200,000 at a casino six months prior (in approximately October 2017).  He was unsure of the casino's name, but believed the casino was named "Napa Hill" or "Napa Valley."

17.     Simon indicated that he had a business named Diamonds Gold Rolex Inc., which was incorporated in Florida, and that he had operated the business for two years.  When asked about his jewelry inventory, Simon stated he did not have any because he had pawned it all.

18.     When asked about his arrest history, Simon stated that he had only been arrested on minor marijuana possession charges, stating the arrests were only for "grams."

19.     Simon happened to be traveling with his 2017 1040 Individual Income Tax Return, which showed his total income for 2017 as $69,662.  When asked where his casino winnings had been documented on the tax form, Simon stated they had not been filed yet.[1]

20.     A preliminary review of Simon's criminal history reviewed multiple arrests for marijuana possession, including Possession with Intent to Sell Marijuana, and not solely "minor" marijuana possession charges as indicated by Simon.

---

[1] Although Simon is able to deduct gambling losses against winnings, he was required to report all gambling winnings as income on his tax return; no winning were reported on the return shown to agents.  Failure to declare such winnings on a Federal income tax return filed with the Internal Revenue Service violates Title 26.

21.    Upon examination of Simon's carry-on bag containing the currency, both SA Perez and TFA Alleyne smelled the odor of marijuana emanating from the bag.

22.    Once agents removed the money from the carry-on bag, SA Perez observed a green leafy substance at the bottom of the bag which, based on his training and experience, he identified as marijuana.  Agents explained what they found to Simon, who then asked to see the bag.  Upon looking in the bag, Simon identified the green leafy substance as "crumbs" and stated he smokes marijuana.

23.    SA Perez inspected the money and observed that while most was wrapped with money bands, none of the bands had markings consistent with the money having been disbursed by a financial institution.  SA Perez questioned Simon about the bands.  Simon stated he had wrapped the money in bands, because otherwise, the money didn't look proper.

24.    A properly trained narcotics detection dog, "Bowden," positively alerted to the presence of the odor of drugs on the Defendant Funds.  Bowden is trained to detect the odor of six controlled substances: cannabis, cocaine HCL, cocaine base, heroin, methamphetamine, and MDMA.

25.    The Defendant Funds were then seized by HSI.

26.    The seized money was taken to Loomis Financial Services where it was counted.  The official count was $129,719.00.  The money was comprised of:

497    $100 bills

109    $50 bills

| 3266 | $20 bills |
|---|---|
| 569 | $10 bills |
| 707 | $5 bills |
| 24 | $1 bills. |

Based upon SA Perez' training and experience, the specific denomination amounts are consistent with street-level drug sales.

## ADDITIONAL INVESTIGATION

### *Subsequent Money Seizure*

27.    On May 15, 2018, 23 days after the Defendant Funds were seized, police officers assigned to the High Intensity Drug Trafficking Area Interdiction Taskforce in Portland, Oregon were working an interdiction detail at the Amtrak train station located on 6th Avenue in Portland.

28.    Specifically, law enforcement officers were working Train 27, which originates from Chicago, Illinois and terminates in Portland.  This particular route is known by law enforcement to be a popular route for those transporting drugs and/or drug proceeds.  While passengers were exiting the train, officers identified themselves as law enforcement and requested permission for a narcotics-detection canine to sniff the bags of some of the passengers exiting the train.

29.    Due to the way in which two particular men exited the train, officers made contact with the two men, who were later identified as Simon and Steven Rijo (Rijo).  Officers asked for consent to have a properly trained narcotics-detection

canine sniff their three bags, to which Simon and Rijo consented. Simon had one duffle bag, and Rijo had one duffle bag and a back-pack.

30.    The narcotics-detection canine positively alerted to the presence of the odor of drugs on all three bags.

31.    Officers then gained consent from Simon to hand search his duffle bag. Rijo also provided consent to search his two bags.

32.    Officers found a large amount of currency inside Simon's duffle bag. Some of the money found in Simon's bag was wrapped in money bands, but did not appear to come from a financial institution.

33.    Officers also found a large amount of money in Rijo's bags, which were banded together with rubber bands.

34.    Simon and Rijo both stated they were traveling with over $100,000. They also both stated they were traveling from Florida to Oregon for the purpose of buying property.[2] Both men indicated that they had only been to Portland once, about two months ago.

35.    Simon told officers the money was winnings from a casino in Napa Valley, California from October 2017. Simon also showed officers online bank statements, which showed large deposits followed by large withdrawals, which is inconsistent with the statements he made during the Orlando Seizure about keeping

---

[2] The trip from Florida to Portland via train took approximately four days.

his money at home.  Simon did not tell officers about the seizure of the Defendant Funds in Orlando.

36.     However, when confronted about the seizure of the Defendant Funds, Simon told officers that he has multiple sources of income, and only a portion of his casino winnings were seized in Orlando.

37.     In total, officers seized $107,460 from Simon and $166,530 from Rijo, for a total of $273,990.00.  Rijo claimed he won $150,000 at a casino approximately two to three months prior to the seizure.

*Simon's Criminal History*

38.     On or about June 25, 2008, Simon was adjudicated guilty in the Circuit Court of the Ninth Judicial Circuit, in and for Osceola County Possession of More Than 20 Grams of Cannabis (felony) and Possession of Drug Paraphernalia (misdemeanor).  Court Case Number: 492008CF000577XXCRXX.

39.     On or about May 1, 2015, Simon was adjudicated guilty in the Circuit Court of the Ninth Judicial Circuit, in and for Osceola County, of Possession of More Than 20 Grams of Cannabis and Possession of Drug Paraphernalia.  Court Case Number: 492014CF004275XXXAXX.

*Diamonds Gold Rolex, Inc.*

40.     Simon's alleged jewelry business, Diamonds Gold Rolex, Inc., filed Electronic Articles of Incorporation with the Florida Department of Sate on August 14, 2015.  The electronic signature of the incorporator was listed as: Michael A. Simon.  The principal place of business address was listed as: 12213 Wild Iris Way,

Apto[sic] 112, Orlando, FL 32837.  On June 28, 2017, Diamonds Gold Rolex, Inc. filed a 2017 Florida Profit Corporation Reinstatement.

41.     An internet search revealed this address to be a 1,217 square foot condo located in a residential neighborhood.  Multiple internet searches for Diamonds Gold Rolex, Inc. did not reveal an internet presence for the business.  The business does not appear to have a store location customers can visit, nor an online website that customers can order from, which would be typical for a legitimate jewelry business.

42.     Additionally, the defendant's 2017 tax return did not show any wages from a "C" corporation, or income from an "S" Corporation, which depending on how Diamond Gold Rolex, Inc. was set-up, would be required to be reported on his tax return if, indeed, the business had made money.

## CONCLUSION

Based on the aforementioned facts, SA Perez believes that sufficient probable cause exists to believe that the Defendant Funds are: 1) money furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act; 2) proceeds traceable to such an exchange; and/or 3) money used or intended to be used to facilitate a violation of the Controlled Substances Act.  Thus, the Defendant Funds are subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, pursuant to Supplemental Rule G, Plaintiff United States of America requests that this Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b)(1), initiate a process of forfeiture against the Defendant

Funds, and duly notice all interested parties to appear and show cause why the

forfeiture should not be decreed.  The United States further requests the Court order

the Defendant Funds forfeited to the United States for disposition according to law

and grant the United States such further relief as this case may require.


Dated: September 21, 2018                    Respectfully Submitted,


                                             MARIA CHAPA LOPEZ
                                             United States Attorney


                                 By:    _____

                                             NICOLE M. ANDREJKO
                                             Assistant United States Attorney
                                             Florida Bar No. 0820601
                                             400 W. Washington Street, Suite 3100
                                             Orlando, Florida 32801
                                             (407) 648-7500 – telephone
                                             (407) 648-7643 – facsimile
                                             E-mail: nicole.andrejko@usdoj.gov

## **VERIFICATION**

I, Nestor Perez, hereby verify and declare under penalty of perjury, that I am a Special Agent with Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations (HSI), and pursuant to 28 U.S.C. § 1746, that I have read the foregoing Verified Complaint for Forfeiture *in Rem* and know the contents thereof, and that the matters contained in the Verified Complaint are true to my own knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case together with other DEA Special Agents.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Executed this 21 day of September, 2018.

Nestor Perez
Special Agent
HSI

JS 44 (Rev. 11/15)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

United States of America

**DEFENDANTS**

$129,719 in United States Currency

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Orange

*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☒ 1   U.S. Government Plaintiff
- ☐ 2   U.S. Government Defendant
- ☐ 3   Federal Question *(U.S. Government Not a Party)*
- ☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☒ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
21 U.S.C. 881(a)(6)

Brief description of cause:
proceeds traceable to and/or money used or intended to be used to facilitate a violation of 21 U.S.C. §§ 841 & 846

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE   9/21/18

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____